UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ZANETA SHIVERS,

    Plaintiff,

v.

CHARTER COMMUNICATIONS, LLC.,

    Defendant.

:

:

Case No. 2:20-cv-5862
Judge Sarah D. Morrison
Magistrate Judge Preston Deavers

**OPINION AND ORDER**

Plaintiff Zaneta Shivers, an African-American woman aged over forty, alleges Defendant Charter Communications unlawfully terminated her due to her race and age in violation of Title VII of The Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, the Age Discrimination in Employment Act, 29 U.S.C.S. § 621 *et seq.*, and Ohio Revised Code Chapter 4112. (ECF No. 1.) Charter moves for summary judgment (ECF No. 25), Ms. Shivers opposes (ECF No. 28), and Charter has replied (ECF No. 32). Briefing and review being complete, the Court **GRANTS** Charter's Motion. (ECF No. 25.)

**I.    BACKGROUND**

In February 2018, Ms. Shivers was promoted to the position of Credit Service Associate ("CSA") at Charter. (ECF No. 25-1, ¶ ¶ 4-6.) CSAs worked with customers on collections, payment exceptions, and refunds. (ECF No. 25-2, ¶ 7.) They "primarily performed two tasks: (i) balance transfers[ ] and (ii) payment research," with the latter making up the majority of the work. *Id.* Upon her promotion,

1

Charter provided training in both areas. *Id.* at ¶ 8. Joshua Bliss supervised Ms. Shivers. (ECF No. 25-2, ¶ ¶ 3, 5.)

Each time a customer called with a payment concern a "ticket" was created. *Id.* at ¶ 6. Charter partly measured the effectiveness of CSAs based on the percentage of successfully resolved tickets, with 90-95% resolution being the minimum goal. *Id.* at ¶ 9. Ms. Shivers failed to meet that minimum in April, May, June, July, September, October, and November 2018. *Id.* at ¶ 10.

In June 2018, Ms. Shivers complained to Joanne Gorte (Mr. Bliss's manager) that she did not receive the same training that Sarah Weaver, a younger Caucasian CSA, did. *Id.* at PageID 430-33; ECF No. 30, PageID 847-48. Ms. Shivers avers that Ms. Weaver received between five and ten days of training while Ms. Shivers received only one and a half days of training. (ECF No. 28-1, ¶ ¶ 6-7.) Ms. Shivers also had to wait for one month to obtain a computer while Ms. Weaver enjoyed immediate computer access. *Id.* at ¶ 8.

Mr. Bliss counseled Ms. Shivers on how to improve her ticket resolution in August and September 2018. (ECF No. 25-3, PageID 406, 550-51). Mr. Bliss also arranged for Kelly Dawson, another CSA, to provide three additional days of training to Ms. Shivers in September 2018. *Id.* at PageID 408-410, 547. Two months later, Mr. Bliss shared his performance and attendance concerns with Ms. Shivers. (ECF No. 25-2, PageID 548-552.)

On December 12, 2018, Mr. Bliss notified Ms. Shivers that Charter was placing her on a performance improvement plan ("PIP") due to her "inability to meet the minimum departmental performance goals." *Id*. at PageID 201.

At the end of December, Ms. Shivers requested a meeting with Julie Tucker, Charter's Human Resources Manager. During that meeting, Ms. Shivers told Ms. Tucker that Mr. Bliss had "a personal issue against" her because of "[her] age, because of [her] tenure with the company, because [she] was a black woman." (ECF No. 25-3, PageID 435-36, 562.) Ms. Shivers also complained that Mr. Bliss denied all of her vacation requests. *Id*. at 435.

Roughly one week later January 2019, Charter put Ms. Shivers on a six-month PIP.  (ECF No. 25-3, PageID 414-417, 548-49; ECF No. 28-1, PageID 602.) As part of the PIP, Ms. Shivers was put on the mail team, which reduced the number of tickets she was responsible for and made it easier for her to reach her performance goals. (ECF No. 25-3, PageID 439.)

Ms. Shivers' annual performance review was in February 2019. She received a score of 2.3 out of 5, meaning "Partially Achieved Expected Performance." (ECF No. 25-3, PageID 394; ECF No. 25-2, PageID 201.) That score was too low to qualify her for a raise and CSAs were not eligible for bonuses. (ECF No. 25-1, PageID 136.)

In April 2019, Charter learned that Ms. Shivers hung-up on a customer in March 2019. (ECF No. 25-2, PageID 213.) Charter terminated Ms. Shivers on April 16, 2019 for the hang-up. *Id*. at PageID 202. She was forty-seven years old at the time of her termination. (ECF No. 1, ¶ 36.)

3

Ms. Shivers received her right to sue letter in August 2020. (ECF No. 1, PageID 16.) She initiated this action in November 2020, asserting that she was terminated not because of the hang-up but because of her race and gender. (ECF No. 1.) In addition to federal and state race and age discrimination claims, Ms. Shivers asserts state law claims for wrongful discharge, breach of implied contract, promissory estoppel, and intentional infliction of emotional distress. *Id.* Charter denies all claims and moves for judgment on each. (ECF No. 25.)

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing there are no genuine issues of material fact, which may be achieved by demonstrating the nonmoving party lacks evidence to support an essential element of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56). When evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

A genuine issue exists if the nonmoving party can present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as

4

to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir. 1993). In other words, "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the non-moving party).

### III. DISCUSSION

#### A. Race and Age Discrimination

Ms. Shivers alleges Charter decided administrative issues against her, denied her a raise and bonus, and unlawfully terminated her employment based upon her race and age. Her federal and state discrimination counts utilize the same analytical framework. *White v. Kroeschell Facility Servs.*, No. 3:20-cv-130, 2021 U.S. Dist. LEXIS 183907, at *5 (S.D. Ohio Sep. 27, 2021) (Newman, J.) (Title VII case law applies to Chapter 4112 race claims); *Minadeo v. ICI Paints*, 398 F.3d 751, 763 (6th Cir. 2005) (ADEA case law applies to Chapter 4112 age claims).

"The *McDonnell Douglas/Burdine* formula is the evidentiary formula applicable not only to claims brought under Title VII, but also claims under [the] ADEA . . . ." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir.1992) (citations omitted). Ms. Shivers' case is circumstantial, so she "must first establish a *prima facie* case of discrimination . . . ." *Pio v. Benteler Auto. Corp.*, No. 21-1231, 2022 U.S. App. LEXIS 3564, at *8 (6th Cir. Feb. 7, 2022). If she does that, then Charter "must articulate some legitimate, nondiscriminatory reason for the termination. If

5

[Charter] meets this burden, then the burden of production shifts back to [Ms. Shivers] to demonstrate that the proffered reason is a pretext." *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012) (internal citation and quotation marks omitted).

The discussion begins and ends with the *prima facie* analysis. To establish her *prima facie* claim of indirect race and age discrimination, Ms. Shivers must show by a preponderance of the evidence that she: 1) is a member of a protected class; 2) is qualified for the job; 3) suffered an adverse employment decision; and 4) was . . . treated differently than similarly situated non-protected employees. *Newman v. Fed. Express Corp.*, 266 F.3d 401, 406 (6th Cir. 2001) (race); *Moore v. AMPAC*, 645 F. App'x 495, 498 (6th Cir. 2016) (age); *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 868 (6th Cir. 2001) (preponderance). The third and fourth elements are in dispute here.

### 1. Adverse Employment Decision

Ms. Shivers initially asserts she suffered adverse employment decisions based on her race and age in the form of negative administrative determinations, namely that Charter: (1) provided her with insufficient training; (2) delayed her computer access; (3) assigned her a heavier workload in a different time zone; (4) denied more of her leave requests; and (5) required her phone to be "available" as compared to Charter's younger, Caucasian employees. (ECF No. 1, ¶ ¶ 20-31 and ECF No. 28-1.)

6

Charter disputes those allegations. Nevertheless, it argues that those administrative actions, individually and/or collectively, fail to rise to adverse employment decisions.

In fact, Ms. Shivers complains about "*de minimis*" employment actions, not adverse employment decisions sufficient for her *prima facie* case. *See Vitt v. City of Cincinnati*, 97 F. App'x 634, 639 (6th Cir. 2004) (no adverse action where employer "fail[ed] to provide [plaintiff] with computer training"); *Powell v. Anthem Prescription Mgmt., Inc.*, No. 1:04-CV-468, 2005 WL 1652706, at *8 (S.D. Ohio June 16, 2005) (Hogan, M.J.) ("decisions about whether to offer training are within the realm of the employer's business judgment"); *Stewart v. Esper*, 815 F. App'x 8, 18 (6th Cir. 2020) (initial denial of computer access "mere inconvenience" which did not rise to level of being materially adverse); *Johnson v. UPS*, 117 F. App'x 444, 450 (6th Cir. 2004) (scheduling matters not adverse actions); *Kendall v. VA*, No. 3:16-cv-434, 2018 U.S. Dist. LEXIS 211959, at *23 (S.D. Ohio Dec. 17, 2018) (Newman, J.) (higher workload not adverse action); *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 539 (7th Cir. 2007) (harder work assignments not adverse actions "absent any evidence that discrimination motivated" the assignments); *White v. Andy Frain Servs.*, 629 F. App'x 131, 133-4 (2d Cir. 2015) (denial of vacation requests did not constitute adverse employment action); *Moorer v. Summit County Dept. of Job and Fam. Servs.*, No. 5:10CV457, 2011 WL 2746098, at *10 (N.D. Ohio July 14, 2011) (holding employer's actions regarding vacation requests were not adverse actions); *Henry v. Ohio Dep't of Mental Retardation & Developmental Disabilities*, 162 F.

7

Supp. 2d 794, 800-01 (S.D. Ohio 2000) (Rice, J.) (employment action must be more than inconvenience to be materially adverse).

Ms. Shivers fails to establish that Charter's administrative decisions equated to adverse employment actions.

### 2. Similarly Situated

Ms. Shivers' allegations that Charter denied her a raise and bonus, failed to employ progressive discipline with her, and terminated her because of her race and age do involve adverse employment actions. For those claims, she fails to establish the fourth aspect of her *prima facie* burden—that she was treated differently than similarly situated non-protected employees. On this element, Ms. Shivers and her presented comparators must be similar "in all relevant respects," *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 353 (6th Cir. 1998) (emphasis in original), and must have "engaged in acts of comparable seriousness." *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 710 (6th Cir. 2006) (citation omitted).

Ms. Shivers does not identify a similarly situated non-protected Charter employee who hung up on a customer and maintained his or her job. (ECF No. 25, PageID 119; ECF No. 28; ECF No. 32, PageID 1503.) Nor does she identify a similarly situated non-protected Charter employee who received a 2.3 performance score and received a bonus and/or a salary increase. And she does not identify a similarly situated non-protected Charter employee who received discipline instead of termination after hanging up on a customer while on a PIP for low performance

8

scores. Ms. Shivers thus fails to sustain her *prima facie* burden for her bonus, raise, discipline, and termination claims.

Ms. Shivers' attempt to sustain her *prima facie* burden is unsuccessful and discussion of the remaining *McDonnell Douglas* analysis is unnecessary. The Court **GRANTS** Charter's Motion for Summary Judgment on Ms. Shivers' federal and state race and age discrimination claims. (ECF No. 25.)

### B. Hostile Work Environment

Although Ms. Shivers' Complaint raises a hostile work environment claim, she fails to respond to Charter's Motion for Summary Judgment on that count. (ECF No. 1, ¶ ¶ 46-50; ECF No. 25, PageID 125-26; ECF No. 28; ECF No. 32, PageID 1499.) She therefore abandons her hostile work environment claim, and Charter is **GRANTED** summary judgment on this claim. *Chic Promotions, Inc. v. Jewelers Mut. Ins. Co.*, No. 1:07cv-417, 2009 U.S. Dist. LEXIS 87930, at *5-6 (S.D. Ohio Sep. 24, 2009) (Barrett, J.) (failure to defend claim on summary judgment equates to abandonment).

### C. Retaliation

Ms. Shivers alleges Charter's placing her on a PIP and terminating her employment was retaliation for her complaints of discriminatory treatment. She seeks relief under Title VII and Chapter 4112 for those alleged wrongful acts. (ECF No. 1, ¶ ¶ 46-50.) Charter argues Ms. Shivers' failure to show a lack of materially adverse action and to establish causation warrant judgment in its favor on those claims. (ECF Nos. 25, PageID 123-25; No. 32, PageID 1499-1504.)

9

"Because the Ohio Supreme Court has held that an action under Ohio Revised Code § 4112 mirrors that under Title VII, *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n*, 66 Ohio St. 2d 192, 196, 421 N.E.2d 128 (Ohio 1981), [the Court] will analyze plaintiff's state and federal claims of illegal retaliation solely under Title VII." *Abbott v. Crown Motor Co.*, 348 F.3d 537, 541 (6th Cir. 2003). To establish her *prima facie* claim of retaliation, Ms. Shivers must show that: "(1) [she] engaged in activity protected by Title VII; (2) [her] exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was 'materially adverse' to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action." *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014) (quoting *Jones v. Johanns*, 264 F. App'x 463, 466 (6th Cir. 2007)). If Ms. Shivers successfully proves those elements

> the burden then shifts to the defendant to come forward with a legitimate, non-discriminatory and non-retaliatory reason for the adverse action against the plaintiff. If the defendant comes forward with a legitimate, non-discriminatory and non-retaliatory reason for its actions, then the burden shifts to the plaintiff to prove that the defendant's proffered reason is a mere pretext for discrimination or retaliation. The nature of the burden that shifts to the defendant should be understood in light of the plaintiff's ultimate and intermediate burdens. The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated [or retaliated] against the plaintiff remains at all times with the plaintiff.

*Allen v. Ohio Dep't of Job & Family Servs.*, 697 F. Supp. 2d 854, 894 (S.D. Ohio 2010) (Smith, J.) (internal citations and quotations omitted).

10

Again, the parties dispute the third (materially adverse action) and fourth (causation) elements of Ms. Shivers' *prima facie* burden.

### 1. Materially Adverse Employment Action

A materially adverse action "means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006) (internal quotation and citations omitted). A PIP does not meet this standard. *Bacon v. Honda of America Mfg., Inc.*, 192 Fed. Appx. 337, 2006 WL 1973242, *5 (6th Cir. 2006) (noting that PIPs "do not, on their own, generally qualify as adverse employment actions"); *see also Jones v. St. Jude Med. S.C., Inc.*, 823 F. Supp. 2d 699, 745 (S.D. Ohio 2011) (Smith, J.) (holding PIP does not equate to materially adverse action under Title VII) (citing *Burlington*, 548 U.S. at 68)).

Ms. Shivers' termination, however, was a materially adverse employment action. *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998). Thus, the issue becomes whether she carries her *prima facie* burden as to causation for her termination.

### 2. Casual Connection

Causation requires proof "that the unlawful retaliation would not have occurred but for [Shivers'] protected activity." *Wingo v. Mich. Bell Tel. Co.*, 815 F. App'x 43, 46 (6th Cir. 2020) (citing *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013)). "Although no one factor is dispositive in establishing a causal connection, evidence that defendant treated the plaintiff differently from similarly

11

situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation." *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).

Ms. Shivers' primary proof of causation for her termination is temporal. Specifically, she argues the one-week gap between her December 2018 discrimination complaints to Ms. Gorte and her January 2019 placement on a PIP as well as her termination three and a half months after the initiation of the PIP establishes the temporal proximity necessary to sustain her burden on this element. (ECF No. 28, PageID 589-90.) But she was told she would be placed on a PIP before her December 2018 complaints. (ECF No. 25-2, ¶ 14.) And, "temporal proximity alone is generally not enough to establish the *prima facie* element of causation." *Wingo*, 815 F. App'x at 46. Even if it were, the four-month gap between her December 2018 complaints and her termination is too long to establish temporal proximity. *See Barlia v. MWI Veterinary Supply, Inc.*, 721 F. App'x 439, 451 (6th Cir. 2018) (three months too long).

Ms. Shivers alternatively argues she satisfies the causation element by the disparate treatment she alleges she received in the form of less training, later computer access, more difficult work, denied vacation time, and harsher discipline in combination with the timing of the highlighted events. (ECF No. 28, PageID 589-91.) But the *de minimis* administrative decisions of which she complains are not materially adverse and therefore do not support her *prima facie* case. And as to her termination, Ms. Shivers fails to identify any similarly situated non-protected

12

employees who had low resolution percentages, were on a PIP, and hung up on a customer but retained their jobs. Ms. Shivers' combination argument is insufficient to establish causation.

Ms. Shivers has not sustained her causation burden and Charter's Motion for Summary Judgment on her termination retaliation claims is **GRANTED**. (ECF No. 25.)

### D. Wrongful Discharge, Breach of Implied Contract, and Promissory Estoppel

Lastly, Ms. Shivers asserts state law claims against Charter for wrongful discharge, breach of implied contract, and promissory estoppel. (ECF No. 1.) The Sixth Circuit "applies a strong presumption against the exercise of supplemental jurisdiction once federal claims have been dismissed." *Packard v. Farmers Ins. Co. of Columbus*, 423 F. App'x 580, 584 (6th Cir. 2011). Accordingly, Ms. Shivers' wrongful discharge, breach of implied contract, and promissory estoppel claims are dismissed **WITHOUT PREJUDICE** to re-filing in state court.

### IV. CONCLUSION

Charter's Motion for Summary Judgment on Ms. Shivers' discrimination, hostile work environment, and retaliation claims is **GRANTED**. (ECF No. 25.)

Ms. Shivers' wrongful discharge, breach of implied contract, and promissory estoppel claims are dismissed **WITHOUT PREJUDICE** to re-filing in state court.

The Clerk shall enter judgment accordingly and terminate this case from the Court's docket.

**IT IS SO ORDERED.**

<u>s/ Sarah D. Morrison</u>
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**
